(No. 4536—

JACK M. VISCO, ROSE VISCO AND LA SALLE CASUALTY COMPANY, A CORPORATION, Claimants, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed October 30, 1953.*

SNYDER, CLARKE AND DALZIEL, Attorneys for Claimants.

LATHAM CASTLE, Attorney General; WILLIAM H. SUMPTER, Assistant Attorney General, for Respondent.

TOLSON, C. J.

Jack M. Visco, Rose Visco and LaSalle Casualty Company filed their complaint on December 16, 1952

seeking to recover for their respective damages based on alleged negligence of the State in maintaining State Highway No. 45, north of Milburn, Illinois.

The record consists of a verified complaint, original transcript of evidence, abstract of evidence, brief and argument of claimants, brief and argument of respondent, and reply brief of claimants.

The facts are as follows:

On April 8, 1951, at about 11:30 A.M., claimant, Jack M. Visco, was driving his 1950 Lincoln Sedan about 40 to 45 m.p.h. in a northerly direction in the north bound lane of State Highway No. 45, a two-lane concrete road, approximately one-half mile north of Milburn, Lake County, Illinois, when he ran into a hole, which was about 18 inches wide, 30 inches long, and 10 inches deep at the center, with the right front wheel and right rear wheel of the car. The impact caused the automobile to swerve to the left, cross the road, travel a distance of about 70 feet, and then collide with a large tree, causing great damage to the vehicle, and physical injuries to Rose Visco, also claimant herein, who was seated beside the driver, her husband. Their eight year old son, Raymond, was seated at her right, and Jack Maslow and Mrs. Maslow occupied the rear seat.

The claimant, Rose Visco, testified substantially to the above facts. Jack M. Visco corroborated his wife's testimony, and stated that his car was in a good mechanical condition at the time of the accident; that the brakes were in good shape; and, that the windshield was clear. He testified he first saw the hole from a distance of about 20 feet, applied his brakes, and slowed down the speed of the car to about 20 to 25 m.p.h. He further stated there was clay or dirt around

the hole; that the highway was divided in the center by a black line, and was dry; that the weather during the morning was on the hazy side; and, that there was no other traffic at the time of the accident at the place in question.

Rose Visco, claimant, was rendered unconscious by the impact, but gained consciousness shortly after the accident. She was taken in an ambulance to the Victory Memorial Hospital in Waukegan, Illinois. She testified that, when she entered the hospital, she had pain at the back of her neck, a bump on her forehead, and a terrific headache. She also stated she was very upset and nervous.

Two disinterested witnesses, Jessie Miller and Elizabeth Otto, testifying in behalf of claimants, stated they had driven their cars over said roadway a few days before the accident, and had seen the hole, which caused the accident. They identified the location of the hole as being in the north bound lane, and near a farm house where they had been visiting the day of the accident. They further stated the hole had been there for about a week. Jessie Miller stated that it was about 12 inches from the east edge of the pavement, and was a rather large sized hole. Elizabeth Otto stated the hole was round, about 18 inches in diameter, and about 10 inches deep, and that it contained some loose gravel.

Dr. Irving Breakstone, called as a medical expert for claimant, Rose Visco, testified he first treated her at the Victory Memorial Hospital on April 8, 1951. At that time she was complaining of pain in the neck and lower portion of the head, and was in a state of shock. She also had a headache, and a little pain in her right eye. She was hospitalized, and given daily diathermy treatments to the muscles around the neck. She was

also given tablets for pain, and sedation with some codeine as a pain relieving agent. Dr. Breakstone further stated she was discharged from the hospital on April 11, 1951, at which time she was still complaining of pain in the muscles of her neck and right eye, and that the X-Rays taken of her cervical spine at the hospital were negative of fracture or bony pathology.

Dr. J. R. Fitzgerald called as a medical expert for claimant, Rose Visco, testified he first treated her in June of 1950. At that time she had a cataract in the right eye which had become over-ripe, and was producing a condition called glaucoma. The eye was slightly crossed, and her sight was reduced to perception of light. Not long after that, sometime in June of 1950, the cataract was removed, and for a period of time the glaucoma was relieved, and the sight was improved in the eye. On February 27, 1951, when he treated her, he found the operation removing the cataract had been successful, glaucoma was under control, and, the visual acuity of the eye with correction lenses was 20/40. He further stated he treated Rose Visco on April 14, 1951, and the visual acuity in the right eye was identical to his previous examination, 20/40. The right eye looked perfectly clear, but, the eye which had been slightly crossed before, was definitely more crossed, although there was no evidence of paralysis of the muscle. However, the pressure had gone up, and was definitely above normal. He further testified she had a stiff neck, and that, while her eyes weren't bothering her particularly, she was dizzy. X-Rays taken were negative. There was no complaint of pain in the right eye. He saw her later on quite a few occasions, and her treatment resolved itself to the problem of combating the glaucoma. The pressure continued to

rise, and various medications were tried to reduce the pressure. They were completely unsuccessful, and on July 8, 1951 an operation was necessitated, and at the same time the crossed eye was also operated on for the improvement of its appearance. The operation was performed at St. Anne's Hospital, where she remained for five or six days. It improved the crossing of the eye, but apparently had practically no effect on the glaucoma. Again on March 7, 1952, an operation for glaucoma (technical name cyclodialysis) was performed, and following that the pressure became normalized, and has remained so ever since. On February 17, 1953, when he last examined her, Dr. Fitzgerald stated the vision in the right eye was limited to counting fingers several feet in front of the eye, and that it was maximally corrected. The vision of the right eye, as compared with February, 1951, constituted considerable deterioration due to glaucoma. He further testified in response to a hypothetical question, incorporating the facts involved in the accident, as well as his personal experience as a treating physician and surgeon, that he found no evidence of direct injury to the eye, to the muscles of the eye, or to the nerves that control the muscles of the eye, and that the nervous and emotional shock of the accident may have precipitated and aggravated the pre-existing condition. He stated that nervous and emotional shock can definitely induce certain types of glaucoma, or aggravate pre-existing types of glaucoma. The eye was slightly crossed when he first saw her, but it was not sufficiently crossed to be considered a cosmetic blemish. After the accident it was a cosmetic blemish, which required surgery. He stated the emotional and nervous shock had aggravated

that condition, for the reason that there was no direct injury to the muscle or the nerve.

Henry L. Somers, called as a witness for respondent, testified he was employed by respondent as a foreman of the State Highway Maintenance Division in Lake County, and in such capacity he had supervision of the highways. He stated he had been engaged in such work for four years in the same area, which included the highway known as State Highway No. 45. He further stated repairs were being made to the pavement on Route No. 45 from Highway No. 120 north to approximately Route No. 73, or the State line, and that he had travelled over this roadway three or four times a week for the purpose of inspecting and supervising the crews, which were working on the road. He inspected Highway No. 45, approximately one-half mile north of Milburn on April 6, 1951, found no breaks, holes, or excavated openings in the pavement, and travelled both ways several times on said date. Mr. Somers testified he travelled over the area again on April 9th or 10th after the accident, and he did not see a hole in the pavement in the area of the roadway, approximately one-half mile north of Milburn on Highway No. 45; he further testified he had no occasion to cut into the pavement at the point where the accident in question occurred. Upon interrogation, he stated that coldmix, an asphalt substance, was used for temporary fillings, and removed when permanent repairs were made; that it was strictly against the rules of the State Highway Department to leave any excavation or holes overnight, and especially over a week end. If there was a bump in the roadway, a "bump" sign was set up; and, if there were imperfections or the pavement was rough, a "rough pavement" or "danger" sign was erect-

ed. These signs were placed 200 or 300 feet before the imperfection in the pavement. He further stated the road was curved at the point, approximately one-half mile north of Milburn, and that there were several imperfections, not holes, in the northbound lane.

In considering the question of negligence, the Court will take judicial notice of the following:

During World War II, the highways of the State were subjected to extraordinary wear, and, due to shortages of strategic material, repair work was postponed, so that nearly all of the highway system was in poor condition. Since the war, enormous sums have been spent to restore the highways, but there has been insufficient time and money to completely rebuild the entire system, and the travelling public cannot but be aware of these facts. Consequently, all, who use the highways, must drive their vehicles in accordance with road conditions.

Since July 1, 1945, numerous "highway cases" have been filed in the Court of Claims, and the negligence complained of falls roughly into three classifications.

1. Positive acts of negligence.

   a.  *Toler* vs. *State*, 16 C.C.R. 315, wherein State excavated pavement, and thereafter did not place barricades or warning devices.

   b.  *Pomprowitz* vs. *State*, 16 C.C.R. 230, wherein State excavated pavement, and thereafter did not place flares in front of barricade.

2. Knowledge of a dangerous condition in the highway, and failure to repair, or give adequate warning.

   a.  *Rickelman* vs. *State*, 19 C.C.R. 54, wherein State cut pavement to install a tile line, the asphalt patch thereafter applied subsided due to poor sub-grade, and the State, with knowledge of this condition, failed to repair, or post warning signs.

3.  Constructive knowledge of a dangerous condition, and failure to repair or give adequate warning.

 a.  *Herrin* vs. *State*, 20 C.C.R. 110, wherein complainant stepped out of a car on the shoulder of the road, and fell into a broken concrete drop box inlet - - hazardous condition had existed for a long time, and the State should have known of this condition, had the proper inspections been made.

The complainants in the instant case must prevail, if at all, on the basis of constructive knowledge of a dangerous condition, and failure to repair or warn.

In reviewing the evidence, two disinterested witnesses testified that the hole in the pavement existed for a week, and that they could hear cars, travelling along said highway, hit the hole from their home, which was located away from the highway.

The size of the hole was 16 inches wide, 30 inches long, and 10 inches deep. It is unthinkable that the foreman of the State maintenance crew, who stated that he had made regular inspections, could have overlooked this hole, if he was performing his duties as he should, and the only reasonable inference is that he was negligent.

There cannot be any hard or fast rule in determining when it can be said that the State had "constructive notice" of a dangerous condition, and each case must be decided on its own particular facts. In the instant case, the enormous size of the hole, and the fact that it had existed for at least a week, leads us to the conclusion that the State had constructive knowledge of the dangerous condition, and failed to either repair, or erect warning signs.

The Court, in arriving at this conclusion, has not overlooked its previous decisions, in which it was held

that the State was not an insurer of all accidents, which occurred by reason of the condition of its highways. *Beenes* vs. *State,* No. 4377, filed on October 5, 1951.

In the case of *Dominic Di Orio* vs. *State,* 20 C.C.R. 53, it was stated:

"It would establish a dangerous precedent for this Court to hold that the State would be liable for all defects on a highway, which it was under a duty to maintain. There is no evidence in this record of the nature of the hole, its size, how long it had been there, how it had been created, or of any notice to the State of its existence, either actual or constructive. There is, therefore, nothing in the record to show that the respondent was guilty of any negligence. To hold that the State would be liable without notice, actual or constructive, would be making the State an insurer.

This Court, by prior decision, is committed to the rule that the evidence must show that the State had actual or constructive notice of the defect, and negligently failed to take precaution to protect the traveling public. (*Dockery* vs. *State,* 18 C.C.R. 177.)"

The Court, therefore, finds from a preponderance of the evidence that the State was guilty of negligence in the present case. It further finds from a preponderance of the evidence that complainants were free from contributory negligence.

The evidence discloses that the damage to the automobile amounted to $1,063.31; that Jack M. Visco was charged with $80.00 as his share of the deductible amount on the insurance policy; and, that LaSalle Casualty Company paid the balance of the repair bill in the amount of $983.31.

The claim of Rose Visco is for $2,500.00, based on doctor and hospital bills in the amount of $845.20, and the balance for pain and suffering, as well as diminished sight in her right eye.

Without repeating the facts heretofore set forth, it is true that Dr. Fitzgerald stated, in his opinion, the emotional shock, resulting from the accident, aggravated the pre-existing glaucoma, and that two additional operations were necessitated to relieve this con-

dition. He also stated on cross-examination (Abstract, page 17):

"You never discharge them as cured, because glaucoma itself is never cured in the sense that the condition can never recur. It is like diabetes; it is under control. *It can recur of its own volition.* It doesn't necessarily take a shock to cause it to recur."

There can be no argument but what Mrs. Visco suffered painful injuries, and suffered shock from this unpleasant experience. However, the testimony of Dr. Breakstone, together with the negative X-Ray reports, leads the Court to the conclusion that the injuries were relatively superficial, and that the most serious consequence was emotional shock.

It is to be noticed that the first operation for glaucoma was in June of 1950. The accident occurred on April 8, 1951. The second operation for glaucoma was in July of 1951, three months after the accident, which apparently did not relieve the condition. The third operation for glaucoma was in March of 1952, eleven months after the accident.

The courts of Illinois have held that a negligent injury, which aggravates a pre-existing tendency to disease, is deemed in law to be the proximate cause of the disease. *Chicago City Railway Company* vs. *Saxby*, 213 Ill. 274.

If the operation in July of 1951, three months after the accident, had cleared up the condition of glaucoma, claimant would have been able to present a much stronger case. However, it required a second operation, eleven months after the accident, to attain the desired result.

This Court, sitting as a Jury, is confronted with two possibilities of the cause of the recurrence of the glaucoma, both of which are entirely logical, i.e., emo-

tional shock, or recurrence of its own volition. Since the claimant must establish her case by a preponderance of the evidence, the Court finds that she has failed to establish that the negligence of the State was the proximate cause of the recurrence of her glaucoma.

Claimant has submitted nine statements showing payment in full for doctor, hospital and related charges. This Court, having decided that the recurrence of glaucoma was not attributable to the negligence of the State, must consequently disallow seven of such charges.

The Court, therefore, makes the following awards:

1. To Jack M. Visco, the sum of ........................... $80.00
2. To LaSalle Casualty Company, A Corporation, the sum of... $983.31
3. To Rose Visco, as follows:
    a. Dr. Breakstone............................. $30.00
    b. Victory Memorial Hospital.................. 70.35
    c. Rose Visco, for pain and suffering............ 750.00
                                              ———— $850.35