(No. 4786█

SUE MAMMEN, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed May 23, 1959.*

COSTIGAN, WOLLRAB AND YODER, Attorneys for Claimant.

LATHAM CASTLE, Attorney General; C. ARTHUR NEBEL, Assistant Attorney General, for Respondent.

WHAM, J.

Claimant, Sue Mammen, brings this action for damages growing out of injuries to her person, which were sustained on December 26, 1956 when the automobile driven by her husband, in which she was a passenger, collided with a barricade marking the end of the pavement on old Route No. 66 southwest of Gardner, Illinois, as they were enroute to their home in Danvers, Illinois, returning from a Christmas visit with their son and family in Elmhurst, Illinois.

She sustained facial injuries and a broken kneecap necessitating the removal thereof by surgery, and claims damages in the amount of $7,500.00.

Claimant contends that respondent was negligent in failing to sufficiently warn the traveling public of the barricade's existence, and the fact that the road came to a dead end.

Respondent's position is that reasonable warning was given to the public of such condition, that claimant and her husband should have seen the barricade, and that the evidence failed to establish respondent guilty of any act or omission, which proximately caused the injuries to claimant.

The record reflects very little conflict in the evidence. Basically, the facts are these: Claimant's husband, Ernest William Mammen, 75 years of age, was driving a 1946 Mercury automobile in which his wife, claimant, Sue Mammen, 73 years of age, was riding as a passenger in the front seat at the time of the accident in question. They had been to Elmhurst to visit their son, Dr. William Mammen, for Christmas, and were returning to their home in Danvers, Illinois.

They had traveled from Elmhurst to Gardner, Illinois on the State highway referred to by the parties as "Old 66". This route formerly ran south and west of Gardner, Illinois. However, in the fall of 1956 that portion of "Old 66" south and west of Gardner was closed, and a new four-lane Route No. 66 was opened.

North of Gardner this road, referred to as "Old 66" through Braidwood and Alternate Route No. 66 through Joliet, could be used as well as the new four-lane highway. South and west of Gardner only the new four-lane Route No. 66 could be used.

The State had closed that portion of "Old 66" by removing part of the slab, and also erecting a barricade across the highway south and west of Gardner. The barricade extended from the east side of the shoulder on

the east to the west side of the shoulder on the west. It consisted of 6 inch I-beams set in the ground at intervals of 12 feet 6 inches with a 12 inch convex steel plate fixed horizontally to the northerly side of the I-beam. The barricade was 63 feet long, 24 inches high, and was painted white.

At the southwest edge of Gardner there is access to the new U. S. No. 66 from the "Old 66" at a four-way stop sign. A short distance south thereof there is a "Y", one branch leading to an overpass over the G. M. and O. R. R. going back to the north toward Joliet, and the other branch being a continuation of old U. S. Route No. 66 south to the place where the barricade now marks the ending of the old route.

Claimant's husband, after stopping at the four-way stop sign at the access road from "Old 66" to the new Route No. 66, proceeded on across the intersection, and made a left turn at the "Y" leading over the railroad tracks. After traveling a short distance, he realized that he was on the Alternate U. S. No. 66 heading back north. He then backed his automobile to the fork, and continued southerly on "Old Route 66".

Approximately 50 feet from the "Y" there was a sign reading "No Outlet". This sign was located approximately one-half to three-quarters of a mile north and west of the barricade. There was no sign indicating that the road was barricaded. The "No Outlet" sign was partially covered by snow.

The weather on that day was bright and clear, and snow covered the ground. As claimant and her husband approached the barricade between 40 and 45 miles an hour, they suddenly saw the barricade in front of them. Claimant's husband attempted to stop the vehicle, but was unable to do so, and crashed into the barricade.

Claimant struck the windshield of the vehicle and numerous other parts thereof. She received facial cuts and a broken kneecap. The kneecap was subsequently removed in its entirety by surgery due to the shattering nature of the fracture. Claimant was taken to the Morris Hospital, and was later removed to the Elmhurst Hospital, so that her son, who was a physician, could take care of her. She was immobilized for six weeks in a metal splint, and was in the home of her son for seven weeks before she was released to go back to her home in Danvers. Claimant contends that, because of the injury to her knee, it has been impossible for her to do numerous household chores both inside and out, and she is unable to carry on the active life, which she lived prior to the accident.

Mr. Arthur Bozue, a witness offered on behalf of claimant, testified that he operated a service station at the intersection of Route No. 66 and the blacktop road on the outskirts of Gardner. He accompanied the ambulance driver to the scene of the accident, and gave first aid to claimant. He testified that the barricade in question was located 30 inches off of the pavement, and was painted solid white. He noted the ''No Outlet'' sign as they returned from the scene of the accident in the ambulance, and observed that the sign was not visible, because it had snow on the face of it. He further testified that, as they approached the scene of the accident in the ambulance, they had a great deal of difficulty seeing the barricade, due to the glare created by the sunshine upon the snow, and, in fact, the ambulance driver nearly struck the barricade before coming to a stop. He stated that there was some snow on the highway around the barricade, and that he saw skid marks of 25 or 30 feet made

by the Mammen automobile immediately before it hit the barricade.

Mr. Kenneth Sandeno, the ambulance driver, offered as a witness on behalf of claimant, testified that he took Mrs. Mammen to the Morris Hospital. He also stated that he could not see the barricade until he was right on top of it; that this was due to the reflection of the sun upon the snow. He said there was some snow on the road, and that the unpaved ground in back of the barricade was covered with snow. He verified the fact that the barricade was painted white. He stated he could not read the "No Outlet" sign, because it was covered with snow.

Dr. William Mammen testified that he cared for his mother in conjunction with Dr. D. G. Michels. He testified that claimant had made a fairly normal recovery, and has full flexion of the knee; but she tires, has some weakness in the knee, and uses a cane by reason thereof. His services rendered reasonably amount to $150.00; the hospital bill was $152.15; the ambulance service from Morris to Elmhurst was $40.00; and, Dr. Michels' charge for the operation in removing the kneecap was $300.00.

Respondent made some attempt to show that claimant's husband, Mr. Mammen, told Mr. Arthur L. Dierstein, a District Traffic Engineer for the Department of Highways, State of Illinois, that he saw the "No Outlet" sign and slowed up, and that he was referring to a time immediately prior to the accident. Mr. Mammen admitted telling Mr. Dierstein that he had seen the "No Outlet" sign, but testified that he was referring to seeing it after the accident rather than before the accident, when it was pointed out to him by Mr. Bozue, as they came back from the scene of the accident. He also testified that he had traveled that route for many years before the construction of the new highway, and had no knowledge of

the pavement's removal, or of the existence of the barricade prior to the accident.

From all the evidence in this case, we find that respondent was negligent in failing to properly inform the motoring public of the barricade's existence and the dead end of the road. Regardless of whether Mr. Mammen saw the "No Outlet" sign or whether he did not, that sign was clearly inadequate as a warning that he would be confronted with a low barricade, which blended into the landscape, and could not be readily seen in time to avoid colliding with it. The evidence clearly reflects that no warning of any kind was given by respondent as to the existence of this barricade.

This situation comes within the purview of *Bovey* vs. *State of Illinois,* 22 C.C.R. 95, wherein we allowed a recovery based upon the insufficiency of the signs to warn the motoring public of a particularly dangerous condition. The rule there announced is that, although the State is not an insurer of the safety of persons in the lawful use of its highways, it is nevertheless under a duty to give warning by the erection of proper and adequate signs at a reasonable distance of a dangerous condition of which the State had notice either actual or constructive. We hold that, under the conditions involved in this case, a sign stating "No Outlet" is wholly insufficient to advise the motoring public of the barricade involved and the abrupt ending of a State highway. Respondent was negligent in failing to maintain adequate signs warning of this particular danger, which obviously was known by it to exist long prior to the happening of this occurrence.

We further find that claimant and her husband were in the exercise of ordinary care for their own safety at

the time of this occurrence, and that the negligence of respondent proximately caused claimant's injuries.

As to the amount of damages, the Commissioner observed claimant, and recommended that she be awarded the sum of $5,000.00 for her injuries. Although it was necessary to remove the patella, the evidence fails to reflect any great limitation of a permanent nature resulting therefrom, and, therefore, we will adopt the Commissioner's recommendation as to the amount of damages, since he had the opportunity of observing claimant personally.

An award is, therefore, made to claimant in the amount of $5,000.00.