51

(No. 82-CC-0243– )

RANDY GATLIN, Individually, and KATHLEEN GATLIN, as Mother of Travis Gatlin, Claimants, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed November 21, 1985.*

*Order on motion seeking interest filed November 24, 1986.*

ARMSTRONG LAW OFFICES (TAD ARMSTRONG, of counsel), for Claimants.

NEIL F. HARTIGAN, Attorney General (WILLIAM E. WEBBER, Assistant Attorney General, of counsel), for Respondent.

POCH, J.

This claim arises from an automobile accident which occurred on May 22, 1981, in Madison County, Illinois. Claimant, Randy Gatlin, alleges he and his minor

son, Travis Gatlin, were injured when Claimant's automobile struck a pile of gravel which covered the width of the roadway and which had been placed there by the Illinois Department of Transportation (IDOT). Claimant alleges the State was negligent for failing to properly warn motorists of the existence of the gravel pile. The claim for the injuries to Travis is brought through Kathleen Gatlin, Travis' mother. Kathleen and Randy Gatlin are divorced, and Kathleen is the custodial parent. This claim was heard before a Commissioner of this Court.

Claimant testified that about 10:00 p.m. on May 22, 1981, he was driving north on Illinois Route 111 near Pontoon Beach, Illinois. He and his son, Travis, age four years, were returning from a miniature golf course and were on the way home. Claimant's intention was to turn east onto an intersecting road known as Chain of Rocks Road, which led to Claimant's home. Route 111 is a four-lane highway divided by a grassy median. The speed limit was 55 miles per hour. Claimant was driving in the lane nearest the median. Claimant testified that another vehicle, whose identity was unknown to Claimant, came up rapidly on the right of Claimant and stayed on Claimant's side, thereby preventing Claimant from getting into the right lane in preparation for his right turn onto Chain of Rocks Road. Although Claimant slowed his vehicle, the second vehicle continued to slow along with Claimant and to block the right lane. Finally, Claimant increased his speed enough to pull in front of the second vehicle. By this time, however, Claimant was too close to the intersection to safely turn right at the speed he was traveling and thus continued past the intersection.

Route 111 changes from a four-lane divided

roadway to a normal two-lane roadway north of the Chain of Rocks Road intersection. At the point where the merge occurs, a service road connects with the northbound lanes of the four-lane divided highway in such a fashion that, if a northbound vehicle fails to merge left into the two-lane roadway but rather proceeds straight ahead, he will cross onto the service road, which then lies parallel to the two-lane portion of Route 111. The service road was the old Route 111 roadway until the present roadway was constructed in 1963. This old roadway presently serves as an access for farmers to get into their fields lying on the east side of the State right-of-way.

Claimant testified that, after he passed the intersection of Chain of Rocks Road on Route 111, the other car pulled alongside and slightly forward of Claimant's car in the inside lane. As the two vehicles approached the lane reduction, this second vehicle forced Claimant's car onto the old service road. Claimant continued along on this road in the hopes that there would be an exit off this road somewhere ahead onto Route 111, where he could then drive back to the intersection with Chain of Rocks Road. Instead, Claimant's car struck a pile of dark gravel which was several feet in height and covered the width of the service road. Claimant testified that, because of the gravel and the surface of the road were the same color, he was unable to see the gravel until just before his car struck it. The impact caused both Claimant and his son to be thrown about inside the car, and both were injured.

There were no signs of any kind before or after entering the service road which warned that the service road was not a through roadway or which warned of the gravel pile. The lane reduction was clearly marked and

signed, and Claimant admitted he knew the service road was not part of Route 111.

Employees of IDOT testified that the gravel was kept at the end of the service road as a convenience for highway maintenance crews and was used for highway repair work. They further testified that no signs had been placed to warn motorists that the service road was not a through roadway or to warn of the existence of the gravel because IDOT considered the service road to be like a private driveway. IDOT had, however, posted "no parking" signs on the service road.

IDOT testimony also claimed that there was no type of sign in its manual which applied or could have been used prior to the date of the accident to warn motorists about the gravel pile or which applied because the old roadway was a service road. Nevertheless, shortly following the date of the accident, IDOT posted a "deadend" sign and "road closed ahead" sign at the entrance to the service road and a "road closed" sign with reflectors in front of the pile of gravel. Such evidence is relevant and admissible on the issue of whether alternative measures of safety are available. *Sutkowski v. Universal Marion Corp.* (1972), 5 Ill. App. 3d 313, 281 N.E.2d 749.

Claimant testified that his car was traveling 40-45 miles per hour when he noticed the gravel pile. He immediately applied his brakes but was unable to reduce the car's speed appreciably. Claimant's car hit the pile and stopped partly up onto the south face of the pile with the front of the car facing upwards at an angle. Claimant and Travis got out of the car and walked a short distance along Route 111 before they were picked up by a motorist, who drove them to Oliver Anderson Hospital in Maryville, Illinois. Claimant was admitted

for treatment, and Travis was X-rayed and treated in the emergency room. Claimant telephoned a towing company to arrange to have his damaged car towed to a local garage. The tow truck operator first notified the Illinois State Police of the accident. Claimant testified that the investigating police officer interviewed Claimant at the hospital and that Claimant told the officer the same story about the other vehicle forcing him off Route 111 onto the service road.

Illinois State Trooper Cernkovich testified that he was dispatched to investigate the accident. When he arrived at the scene, Claimant's car was resting north of the gravel pile. The tracks of the car indicated it had gone up the south side of the gravel pile, which was 4 to 5 feet high, become airborne, and landed on the north side, where it came to rest. The pile's length was about 12 to 15 feet.

Cernkovich further testified that he interviewed Claimant the next day in the hospital. Claimant told Cernkovich Claimant had missed the turn at the Chain of Rocks Road intersection and had continued on to the service road. Claimant was looking in his rearview mirror when his car struck the gravel pile. Cernkovich, who had no independent recollection of the investigation and therefore testified from his report, stated that Claimant told him nothing about trouble with another vehicle. Cernkovich estimated the distance from the service road entrance to the gravel to be 400 to 500 feet. On cross-examination Cernkovich stated that the surface of the service road was weathered concrete and was almost the same color as the gravel pile.

In *Hout v. State* (1966), 25 Ill. Ct. Cl. 301, Claimant Hout suffered damage to his vehicle when he struck a rock pile which had been placed by the State across an

abandoned section of highway which was accessible to traffic on the south end by a graveled connection about 50 feet long to the new highway. The abandoned section of roadway was then used as a local access road. No signs warning of the rock pile or of the fact that the road was not a through roadway were present. In fact, all signs of any kind had been removed from the old roadway. In finding for Claimant, this Court stated:

"There is no question but that respondent was negligent in placing a large pile of gravel across the width of a cement highway, little used as it may have been, without any warning signs, lights, or signals. This Court has long held that 'although the State is not an insurer of the safety of persons in the lawful use of the highways, it is nevertheless under a duty to give warning by the erection of proper and adequate signs at a reasonable distance of a dangerous condition of which the State had notice either actual or constructive.'"

The State argues that, because there were signs adequately directing traffic that Route 111 no longer ran over the service road, this was sufficient. However, such signs gave no warning that the service road was not a through roadway, nor did such signs in any way warn of the danger presented by the gravel pile. (*Mammen v. State* (1959), 23 Ill. Ct. Cl. 130.) "A prudent and careful driver could not reasonably anticipate (the pile of gravel) in the darkness in the absence of warning signs or signals. Instead, he could reasonably assume that the cement highway would not end abruptly without warning." (*Hout, supra*, at 304.) By placing "no parking" signs on the service road, the State allowed the Claimant and any other traffic to reasonably assume that the roadway was open to traffic, absent other warnings.

The State also argues that, given the discrepancies between the testimony of Claimant and that of Officer Cernkovich, it is reasonable to assume Claimant was speeding or "drag racing" with the other vehicle and

drove onto the service road when he missed his turn because of this illegal activity. There is no evidence that Claimant was doing anything illegal while he was on the service road itself, and it is irrelevant why Claimant entered the service road, as it was not illegal to do so.

Even if Claimant's car went over the gravel pile and came to rest on the north side, this is not in itself evidence that Claimant was speeding, as Claimant's own testimony was that he had insufficient time to brake by the time he first saw the gravel pile. Moreover, if Claimant was looking in the rearview mirror when he struck the pile, because the pile was not visible at night and because the State had failed to warn Claimant to be alert for the pile on the roadway, such action by Claimant was not negligence on his part, but rather a normal action by a driver under what appeared to be normal roadway conditions.

As a result of the accident, Claimant received a broken kneecap which healed without incident or disability. Travis, his son, suffered injuries to his teeth, which were not permanent in nature.

Claimant, Randy Gatlin, is hereby awarded the sum of ten thousand ($10,000.00) dollars and Kathleen Gatlin, mother of Travis Gatlin, as custodian parent and guardian is awarded the sum of twelve hundred ($1,200.00) dollars.

## ORDER ON MOTION SEEKING INTEREST

POCH, J.

This cause coming before the Court on Claimant's motion seeking interest. On November 21, 1985, the Court entered awards totaling $11,200.00 to the Claimants.

The Court finds that Claimants' request for interest is denied for the reason that the Illinois Supreme Court has held that interest is only recoverable against the State if it is specifically provided in a statute. *City of Springfield v. Allphin* (1980), 82 Ill. 2d 571, 413 N.E.2d 304.