(No. 80-CC-1639– )

WILLIS BARRY SHAW, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed March 18, 1986.*

BEERMANN, SWERDLOVE, WOLOSHIN, BAREZKY & BERKSON (LAWRENCE R. BAREZKY, of counsel), for Claimant.

NEIL F. HARTIGAN, Attorney General (GLEN LARNER, Assistant Attorney General, of counsel), for Respondent.

PATCHETT, J.

This claim arises out of an accident which occurred on March 28, 1978. The facts are uncontroverted. The Claimant was driving his automobile in a northerly direction on Route 45, known as LaGrange Road, about 100 feet south of an overpass over Route 7 at approximately 10:45 p.m.

The roadway at the accident site had many potholes and cracks, and was rough to ride upon. These defects

had existed, and progressively worsened, from 1976 through the date of the accident.

On March 17, 1978, 11 days prior to the accident, the Department of Transportation had issued a construction permit to DiPaolo Construction Company to locate and construct a twelve-inch (12″) sanitary sewer for the Village of Orland Park. Construction work commenced on March 18, 1978, and was in process at the time of the accident. The sewer was to be installed under the southbound lanes of traffic on Route 45.

The highway was a four-lane highway. On the day of the accident, as a result of the construction, both southbound lanes were closed. The northbound lanes were designated as two-way traffic. Therefore, there was one lane for northbound traffic and one lane for southbound traffic.

Prior to the accident, Claimant was operating his vehicle at 30 to 35 miles per hour. The speed limit in that area was 45 miles per hour. He saw the barricades, noticed the road becoming rough, and reduced his speed to 25 miles per hour. The holes in the roadway were hidden by the gravel upon the roadway. The Claimant's car was the only car traveling in either direction, and the only light available was from the Claimant's car. These lights were on low beam.

Suddenly, the front end of the Claimant's car dipped into a hole located in the middle of the Claimant's lane of traffic. This caused his vehicle to swerve out of control. Claimant's car then collided with the construction crane which had been resting on the outer southbound lane of traffic.

Claimant's brother, Richard Shaw, went to the accident site later that night. He noticed a hole. The

surface of the hole had apparently been covered with gravel, but the gravel seemed to be strewn about outside the hole. There was little gravel left inside the hole. The next morning, a worker with the construction company was observed refilling the hole with gravel.

The permit issued by the Department of Transportation required DiPaolo Construction Company to restore the highway, shoulders, and ditches to a condition equal to that existing before commencement of the work. The permit required DiPaolo Construction Company to hold the Respondent harmless against any personal liability, personal injury, or property damage claims sustained by reason of the construction. DiPaolo Construction Company was also required to conduct the work in such a manner as to minimize hazards to vehicular and pedestrian traffic.

While the Respondent is not an insurer of highways, it does have the duty to exercise reasonable care in the maintenance of highways to prevent hazardous road conditions. (*Walls v. State* (1968), 26 Ill. Ct. Cl. 388.) At least, Respondent has the duty to post signs notifying the public of a hazardous condition. *Moldenhauer v. State* (1978), 32 Ill. Ct. Cl. 514.

According to the uncontested facts, the roadway was rough and filled with potholes for almost two years. The roadway had become progressively worse. There were no warning signs posted. We feel that this constituted negligence on the part of the Respondent.

Respondent argues that the negligence of the Respondent was not the proximate cause of the accident. They argue that the acts, or omissions to act, of DiPaolo Construction Company constituted an intervening cause of Claimant's injuries. Respondent argues that

the permit required DiPaolo Construction Company to maintain two-way traffic at all times during construction and to ". . . conduct the work in such a manner as to minimize hazards to vehicular and pedestrian traffic." Respondent claims that DiPaolo Construction Company failed to properly maintain the road because it cordoned off the highway so that northbound traffic was required to pass over the pothole. They further allege that DiPaolo Construction Company allowed the area of the pothole to be covered with gravel. Respondent therefore argues it was DiPaolo Construction Company's acts, or omissions to act, which proximately caused the accident.

We do not agree. The pothole in question and its general vicinity had been hazardous prior to DiPaolo Construction Company's entry upon the scene. In addition, Respondent knew that by requiring two-way traffic at all times, DiPaolo Construction Company would be required to channel traffic over and above the pothole in question. Thus, Respondent knew or should have known that DiPaolo Construction Company would force traffic over the pothole in the course of its construction project.

In the case of *Watson v. Byerly Aviation, Inc.* (1972), 7 Ill. App. 3d 662, 288 N.E.2d 233, cited by the Respondent, the Court indicated that where the first wrongdoer could reasonably anticipate the intervening cause, the first wrongdoer is still liable. In this case, the Respondent could have reasonably anticipated the channeling of traffic over a preexisting pothole due to the sewer construction project. The Respondent should have also known that DiPaolo Construction Company was not required to repair the highway to a higher standard than had existed prior to the beginning of

the sewer construction work. Therefore, we feel that it was the Respondent's negligence which proximately caused Claimant's injuries.

Respondent further argues that Claimant's own negligent conduct contributed to his injuries, and that any award should be reduced to the degree Claimant's conduct contributed to his own harm. We feel that there was a certain amount of contributory negligence present in this case. The Claimant was operating a car at 25 miles per hour at night in an area designated by construction warnings. In addition, the road was bumpy and covered with gravel. Finally, despite the fact that there was no oncoming traffic, he was operating his automobile with his headlights on low beam. We, therefore, find that the Claimant's award should be reduced by a factor of 10% because of his own comparative or contributory negligence.

As a result of the accident, the Claimant was taken to Palos Community Hospital. He stayed there for 16 days, during which time glass was extracted from his face. His right leg was in traction, and surgery was performed to insert a metal rod in his leg. The Claimant was forced to use crutches until August 5, 1978. He then used a cane for another eight or nine months. In October 1978, the Claimant had an increase of pain in his right hip, and was forced to have a second surgery to have the rod reinserted. In the future, surgery will again be required to remove the metal rod.

As a result of his injury, Claimant was unable to take certain courses at his university. Because of this, the Claimant graduated three years late. The Claimant's right leg is now shorter than his left leg, and he walks with a limp. In addition, he has noises in his right knee.

Formerly a physical education major, he is now precluded from any significant participation in sports.

His special damages are $6,871.00. In addition, future medical expenses should be approximately $5,300.00. The Claimant has lost three years' salary as a teacher and will lose income in the future when surgery is required to remove the rod. The Claimant's automobile was damaged in the amount of $1,854.29. The Claimant has suffered extreme pain during various periods of his hospitalization.

For all the foregoing reasons, we award the Claimant the sum of $100,000.00. This will be reduced by a factor of 10%, due to the Claimant's negligence. This will result in an award of $90,000.00. We will then deduct $22,500.00, which the Claimant has received from other sources. The Respondent is entitled to credit for this amount. Thus, we award the Claimant the net sum of $67,500.00.