(No. 84-CC-3552— )

JAN E. HEID, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed July 31, 1991.*

CLARK & STURGEON, for Claimant.

ROLAND W. BURRIS, Attorney General (CLAIRE TAYLOR, Assistant Attorney General, of counsel), for Respondent.

## OPINION

Burke, J.

This claim arises from an automobile accident which occurred on March 3, 1984, in Madison County, Illinois. Claimant, Jan E. Heid, alleges that he was injured when he pulled his vehicle off of I-70 onto a road where there appeared to be a weigh station. His vehicle fell into a hole where there had previously been a truck weigh scale, at a weigh station for eastbound traffic on Highway 70. Claimant alleges the State was negligent in removing the scale and for failing to properly secure the exit ramp to prevent vehicles from entering thereon, or to properly warn drivers eastbound on Highway 70 that the entrance was under construction, and a dangerous condition existed.

The accident happened at approximately 8:30 or 9:00 p.m., March 3, 1984. Claimant was on his way home from work and stopped at the Dutch Hollow Barn in Belleville with a friend and had a sandwich and a couple of beers.

Later, Claimant was eastbound on Highway 70 at approximately mile post 9. Claimant was not aware that

the weigh station had been removed. He saw a single sign that said the weigh station was closed and this meant to Claimant that they were not weighing trucks. Claimant pulled off the ramp and the next thing he knew, he woke up "beat-up." Claimant stated that there were no barricades either on the ramp itself or anywhere in the vicinity that he could see other than the one at the entrance that said the weigh station was closed. The closed sign was a sign—not a barricade. Claimant stated he went right down the middle of the ramp. When he realized the accident happened, he was partially in a hole—the front end was cockeyed. A police officer found Claimant's truck and he was taken to Memorial Hospital in Belleville.

Ronald W. Kraus, an engineer with the Illinois Department of Transportation testified that the weigh station had been at the location since the early 60s. A project was under way to remove the weigh station. The exit ramp was shut down and barricaded. Four barricades were erected at the site. Two were erected on either side of the sand pile at each end of the pit, and two barricades were put at the exit ramp where you would leave Interstate 70 to come up the ramp to the eastbound weigh station, and these two barricades were staggered. They were type 3 barricades averaging five feet tall, with reflectorized tape. Krause knew of no reason for there to be any indentation on the exit ramp at this location in March 1984 and all weigh station signs had been taken down.

James K. Ferraro, a resident engineer for the Illinois Department of Transportation, testified that he was familiar with the area of the weigh station after July 23, 1983. He saw the hole where the scale was removed on April 11, 1984, and it was full of sand and reasonably

full. Ferraro had sustained a back injury so he was not familiar with barricades on the jobsite at or about the time of the accident.

Dennis Tarrant drove a wrecker to the scene. When he arrived at the scene, he observed at the entrance to the scale ramp, a barricade covering the entire entrance. He estimated the ramp to be approximately 12 to 15 feet wide with a grass ditch on either side. It appeared to Tarrant that the pickup truck had gone straight into a hole four feet deep and 12 to 15 feet from side to side, and six feet from front to back, and that the truck had bounced up and out, landing on all four tires approximately 20 to 25 feet on the other side of the hole.

Similarly, Brian Slesinski, who works at the same service station as witness Tarrant, stated that in December of 1983, a silver Pontiac had gone into the same hole as described by Tarrant. Slesinski also remembered seeing two barricades at the entrance to the ramp, but one had been knocked down. Both Tarrant and Slesinski noted that there were no flashing lights on the barricades or in the area.

The medical records of Claimant reveal that the Claimant was admitted to Memorial Hospital in Belleville on March 4, 1984. It was found that the Claimant had sustained a bilateral fracture of the mandible and dislocation of the right temporomandibular joint and multiple rib fractures on the left and a fracture of the temporomandibular joint. Chest X rays were consistent with pulmonary contusion with infiltrations that cleared. It was believed that Claimant had sustained a cerebral concussion with some loss of memory. An admission memo of Dr. Kini revealed that Claimant presented a history of alcohol abuse and that at his admission,

his blood-alcohol level was such that he was intoxicated. Dr. Kini's impression included the thought that Claimant was suffering from an element of alcohol withdrawal and possibly some drowsiness due to Librium. It appears that Librium was administered at Memorial Hospital.

Claimant was issued a traffic citation by the State Police for improper lane usage, pled guilty to the ticket and was convicted.

Claimant denies intoxication by alcohol or drugs; however, the emergency room record reveals a blood-alcohol content of .179 at 2:03 a.m. Claimant proceeded to Memorial Hospital in Belleville at 1:35 a.m., March 4, 1984. Claimant was hospitalized 19 days and incurred medical bills totaling $21,080.35, only $1,000 of which was paid by insurance. Claimant seeks damages against Respondent in the sum of $100,000.00 "plus whatever else this Court deems just and equitable."

Claimant argues that at the time he pulled off of eastbound I-70 onto the entrance ramp of the former weigh station, there were absolutely no barricades, gates, flares, lights or signs warning motorists of the ongoing construction, or of the danger that lay just ahead. Claimant argues that Respondent was negligent in failing to properly secure the exit ramp to avoid anyone from entering thereon, and in not filling the existing hole on the entrance ramp after creating a dangerous condition, and after having had ample opportunity and notice that the defect existed. Finally, Claimant argues that the State failed to properly warn the general public that the entrance was under construction, and that a condition of danger existed.

The State argues that the ramp was barricaded and that Claimant's testimony to the contrary consisted of

falsehoods and self-serving statements. The State asserts that it was Claimant's responsibility to look out and to drive in the proper highway lanes; the State asserts that Claimant's plea of guilty to the traffic citation is *prima facie* evidence of Claimant's failure to perform his duty. Furthermore, the State argues that Claimant's blood-alcohol content at 2:03 a.m. on the day following the accident raises the presumption that Claimant was under the influence of alcohol, which constitutes yet further proof of Claimant's breach of his driving duties under Illinois statute.

This Court has long held that

"although the State is not an insurer of the safety of persons in the lawful use of the highways, it is nevertheless under the duty to give warning by the erection of proper and adequate signs at a reasonable distance, of a dangerous condition of which the State had notice, either actual or constructive." (*Hout v. State* (1966), 25 Ill. Ct. Cl. 301.)

In appropriate circumstances, this Court has repeatedly sustained awards in situations where the State has failed to give warning of dangerous conditions of which it has either actual or constructive notice. *Gatlin v. State* (1985), 39 Ill. Ct. Cl. 51.

The evidence in this case establishes that there was, indeed, a dangerous condition along and upon the exit ramp to the former weigh station for eastbound traffic on I-70. The State was under a duty to post warning signs and to give warning of the dangerous conditions of which it did, indeed, have actual notice. The evidence in this case as to whether or not there was an effective appropriate warning to the drivers of vehicles eastbound on I-70 is in dispute.

Claimant testifies that there were no barriers or signs that he could recall other than a sign which indicated to him that the weigh station was closed. The

police report does not indicate the presence of barricades at the scene; however, Claimant received a traffic citation for a violation of chapter 95½, section 11—709(a) of the Illinois Vehicle Code which prohibits a vehicle from being moved from the lane of a clearly marked roadway until the vehicle's driver has first ascertained that such movement can be made with safety, and to this charge, Claimant pled guilty. The wrecker driver, Dennis Tarrant, upon arriving at the scene, saw a barricade covering the entire entrance which was 12 to 15 feet wide. Tarrant found Claimant's vehicle approximately 20 to 25 feet beyond a hole cut in the ramp itself, 40 to 50 feet beyond the barricade. Similarly, the witness Slesinski noted approximately three months before Claimant's accident, that at the same location, he remembered seeing two barricades at the entrance to the ramp with one having been knocked down. Thus, on at least two occasions, disinterested witnesses observed barricades at the ramp. On one of those occasions, the barricade, extending completely across the ramp, was observed in place before the State Police had left the scene of Claimant's accident. The evidence preponderates that there was a barricade across the entire width of the exit ramp at the time of Claimant's unfortunate accident. Claimant does not remember how it came to pass that his truck bypassed the barricade, thereby enabling this accident to occur, and there is no other evidence in the record to suggest an answer to this mystery. The fact is that Claimant somehow, while admittedly violating the traffic rules and regulations of the State of Illinois, managed to drive his vehicle around a barricaded ramp entrance so as to ultimately cause this accident. The uncontradicted evidence with respect to the nature of the barricades used at this location established that they were five feet high and bore reflective tape.

We agree with Respondent that unbiased witnesses confirmed that a barricade was at the scene. We further agree with the State that the mere fact that more signs or lights or elaborate precautions could have been taken does not constitute proof of negligence. The record is barren of any suggestion that the barricades which were shown to be in place were inadequate, inappropriate or insufficient for the purpose of reasonably warning vehicular traffic not to enter the ramp. Once having ignored the barricade, Claimant apparently proceeded without sufficient caution, and was injured by a dangerous condition which the barricades had sought to insulate from vehicular traffic. We have no quarrel with the multitude of cases cited by the Claimant in support of his position. In none of those cases, however, can it be said that an award was sustained under circumstances comparable to those in the case at bar.

Wherefore it is ordered that this claim is denied.