(No. 5343—Claim )

MILDRED M. PYLE AND BILLY PYLE, Claimant, *vs.* STATE OF
ILLINOIS, Respondent.

*Opinion filed November 19, 1973.*

HARRIS, HOLBROOK AND LAMBERT, Attorneys for Claimants.

WILLIAM J. SCOTT, Attorney General; WILLIAM E. WEBBER,
Assistant Attorney General, for Respondent.

BURKS, J.

This action arises out of an intersectional collision allegedly caused by the state's negligence in failing to replace a downed stop sign within a reasonable time after having actual or constructive notice of the defect. In the two-count complaint, claimant Mildred M. Pyle seeks damages for personal injuries she suffered in the collision. Her husband, Billy Pyle, claims damages for the loss of his wife's services and consortium as a result of her injuries. [Hereafter the word "claimant" in the singular refers to Mildred M. Pyle unless otherwise indicated.]

The accident occurred at approximately 11:30 a.m. on February 12, 1966, at the intersection of Route 148 and old Route 13 in a sparsely populated area in Williamson County west of Marion. It was a clear day, the road surface was dry, and cars approaching from any direction had an unobstructed view of the intersection.

Route 148 is a north-south, preferential highway, protected by stop signs facing traffic approaching it on old Route 13. At this intersection Route 148 widens to 4 lanes with a 6 foot center curb dividing the two northbound and the two southbound lanes. Being a through

highway, traffic on Route 148 does not stop at this intersection. It merely has warning signs some 750 feet back, indicating a crossroad, old Route 13.

Old Route 13 is a 2-lane, east-west highway on which traffic must stop before entering or crossing Route 148, and on which there is a warning sign, 737 feet in advance of the intersection, announcing "STOP AHEAD". For traffic approaching from the west, as claimant was, there are normally 2 stop signs at the intersection. One of the signs stands on a channel island, dividing the westbound lane from the right turn, commanding through traffic to stop. [This sign was down at the time of claimant's accident. It was knocked down by another accident which had occurred some 29 hours earlier.] The other stop sign stood on the curve of the right turn lane. It sits at an angle so that it is visible to east bound traffic for a distance of 125 feet. Photographic exhibits in the record also show that the back of the large octagonal stop sign across the intersection facing west, was clearly visible from cars approaching from the east.

As claimant, Mildred Pyle, was driving east on old Route 13 and approaching the intersection moments before the accident, she failed to see the "STOP AHEAD" sign but did see a red pick-up truck coming south on Route 148. She estimated that she was then about 120 feet from the intersection; that the truck was about 450 feet north of the intersection; that she had slowed her speed to about 20 miles an hour; and that the truck was traveling about 50. While aware of the oncoming truck, claimant did not stop at the intersection, nor did she see the truck again until the instant prior to the collision. Since she did not see a stop sign in her lane, claimant attempted to cross the intersection without stopping. Claimant said, "I thought he had to stop because I didn't."

A witness, Tom Stubblefield, who had been following Mrs. Pyle "for quite a ways" after she had passed him at a speed between 45 and 50 miles per hour, saw the two vehicles approach the intersection. Stubblefield estimated the truck's speed to be 50 to 60 miles per hour, and told his boy, "If somebody doesn't stop, there will be a collision".

Claimant drove her stationwagon into the intersection and had crossed the first of the 2 southbound lanes of Route 148 when the truck, owned and driven by Cecil Milo Erwin, hit claimant's car broadside, directly at the doors. Claimant was knocked completely out of her car, landed on an island in the northbound side of the road, and sustained serious and permanent injuries.

Claimant, alleging that respondent was negligent in failing to replace a downed stop sign or warning motorists of said dangerous condition at this intersection within 29 hours after a State trooper had discovered the downed sign, contends that said negligence was the direct and proximate cause of her injuries.

Claimant concedes that the driver of the truck was also negligent and did, in fact, recover the sum of $4,000 in damages from him in a separate action in the Circuit Court of Williamson County, No. 66-L-379, a case that was disposed of under a covenant not to sue. [As a result of claimant's said separate suit pending, her claim in this court was continued generally for a period of 2 years.] Claimant takes the position that the negligence of the truck driver, Milo Erwin, and the negligence of the State are concurrent; and the respondent cannot avoid responsibility for claimant's injuries by reason of the fact that a third party was also negligent as an intervening cause.

Claimant seeks to negate any possibility that she was contributorily negligent on the theory that the

downed stop sign converted this crossing into an "open" intersection and hence, she had the right to assume that she had the right of way.

Both parties, at the outset of their briefs, call our attention to *Gray v. State*, 21 C.C.R. 521, a case in which the claim was denied on an entirely different set of facts, but in which we stated the following general rule which is applicable to the case at bar:

"The State is not an insurer against all accidents, which may occur by reason of the condition of its highways. However, the State is negligent, if, having knowledge of dangerous conditions on its highways, it fails to warn users of the highways of such dangerous conditions."

In analyzing the cases cited both for the claimant and respondent, we find that the factual situations in most of them are at variance with the instant case, and some present only abstract propositions of law which are not applicable to the facts as they exist in this claim.

To apply the above rule to the case at bar, we must determine whether and at what time the State had "knowledge of a dangerous condition on its highway" and whether it failed to take appropriate remedial action within a reasonable length of time. The answer, of course, depends upon the facts and circumstances which we will now consider.

It is admitted that the down stop sign was first discovered by State Trooper Jack Anderson 29 hours before claimant's accident. Trooper Anderson reported the downed sign by phone to State Police Headquarters in DuQuoin. The Division of Highways, which has the responsibility for maintaining and repairing highways, including the stop sign in question, denies that it had any notice of the sign being down prior to the accident. Although the accident occurred on a holiday week end, an engineer was on duty at the Division of Highways

traffic office to accept emergency calls. Apparently there was a temporary breakdown in communication between the State Police and the Division of Highways in this instance. The Division of Highways' report states that it repaired this stop sign immediately after receiving notice that it was down, viz., at 9:30 a.m. on Monday, February 14.

Claimant contends that Trooper Anderson was under a duty to report the downed sign to the appropriate state authorities and that, therefore, the State had notice, either actual or constructive, that the sign was down 29 hours prior to this accident. We agree with claimant's contention on this point.

Whether this particular downed sign created the type of "dangerous" condition, contemplated by the rule in *Gray,* is another question. Apparently Trooper Anderson did not consider that the downed sign created such a hazardous condition, based on his 14 years experience as a state trooper, that he should remain at the site or take any other emergency measures after reporting to police headquarters. He may have concluded that the other existing warning signs, information signs, and improvements in the intersection would clearly indicate to an east bound driver that a major intersection existed, and that an ordinarily prudent driver would see the danger and take proper precautions for his or her own safety. We believe there is sufficient evidence in the record to support such a conclusion by Trooper Anderson, although he did not so testify.

We turn next to the question as to what length of time constitutes a "failure" on the part of the State to take appropriate remedial measures after receiving notice of a downed stop sign. Again we believe the answer depends on the facts and circumstances in each particu-

lar case. In the case at bar, we cannot hold that respondent's failure to repair this particular sign or erect warning signs within 29 hours after notice is negligence per se. To do so would establish a new rule for which we find no support in existing case law nor justification by facts in the case at bar.

Because of the numerous tort actions coming before this court that are based on downed stop signs, this court has reviewed a large body of case law, from our own and other jurisdictions, concerning liability for failure to repair or properly maintain a traffic control device at an intersection. We have found no case holding a responsible governmental body liable when it had no more than 29 hours of notice, actual or constructive. Our survey included many cases involving busy intersections, much more hazardous than the one in the case at bar. Indeed, the shortest length of notice we found in any case in which liability was imposed, was the case cited by the claimant, *Caudle v. State*, 19 C.C.R. 35 (1949). There the State had *4 or 5 days notice* that a dangerous hole existed in the center of its highway.

We will cite a few typical cases in which liability was found, and emphasize the length of notice to the governmental unit. In *Johnson v. City of Moline*, 338 Ill.App.220 (1949), the city was held liable where a traffic light was knocked down, promptly removed by the city, but not replaced for a period of *6 days.* During that 6 day period, several accidents had occurred at this busy city intersection. In *Buckley v. City of Chicago*, 3 Ill.App.2d 39 (1954), the court found liability where a stop sign had been removed and missing for *several months* in violation of an ordinance requiring said sign.

This court was also impressed by the following cases from other jurisdictions. In *Wagshall v. District of Co-*

*lumbia*, 216 A.2d 192 (Dist. Col.App.1966), the court imposed liability where the defendant had *six days* actual notice of a downed stop sign at a busy intersection. In *Fanning v. Laramie*, 402 P.2d 460 (Wyo. 1965), liability was found for allowing vegetation to grow and obscure a stop sign since the testimony revealed that this condition developed over *several months* and because of a mandatory duty imposed by statute to erect and maintain the sign in question. In *Firkus v. Rombalski*, 130 N.W.2d 835 (Wis. 1964), there was liability where the government had *19 days* actual notice that a sign had been removed by vandals and the intersection had obstrubed visibility due to its being heavily wooded. In *Cangiamilla v. Brindell-Bruno Inc.*, 210 So.2d 534 (La.App. 1968), liability was imposed where a stop sign was knocked down and reported *47 days* before the accident resulting in suit, and where police contacted highway supervisor a second time because of inaction on part of highway department. In *Richardson v. State*, 218 NYS 2d. 922 (1961), liability was imposed where state highway crew knocked sign down *5 days* before the accident. In *Lyle v. Fiorito*, 60 P.2d. 709 (Wash. 1936), a county was held liabile where its contractor removed a stop sign and advance warning signs and then replaced stop sign, but not advance warning sign, in a negligent manner so that it fell down and remained down for *several weeks,* causing a nighttime collision. In *Phinney v. Seattle*, 208 P.2d 879, Wash. 1949), actual notice of *13 days* of a downed stop sign imposed liability where the State removed a stop sign at an intersection with obstructed visibility, and failed to replace said sign. Also see *Robinson v. State*, 237 NYS 2d 601 (1962).

It should be observed that in all the above cases, as in the *Caudle* case, cited by the claimant, the length of notice was longer than the 29 hours of notice in the case

at bar. We found numerous cases involving longer periods of notice in which liability was denied. We will cite one in which the facts are similar in many respects to the instant cause. In *Applebee v. State of New York*, 127 N.E. 2d 289 (1955), the New York Court of Appeals upheld a finding by the New York Court of Claims that there was no liability against the State where a stop sign had been permitted to remain bent almost to the ground for a period of *7 weeks.* That intersection in question was heavily traveled, but, as in the case at bar, had unobscured views for 600 feet. The court found that the proximate cause was the driver's failure to look, even though the evidence showed that the driver did, in fact, slow to a stop at the intersection before proceeding to enter.

In the case at bar, it is not necessary for us to conclude that the respondent was in no degree negligent, since we find that the facts in this case clearly establishes claimant's own negligence as the main contributory cause of her injuries.

This court has always followed the rule that contributory negligence on the part of a claimant is a bar to recovery of damages. The contributory negligence rule was carefully reconsidered and reaffirmed by the Illinois Supreme Court in *Maki v. Frelk*, 40 Ill.2d 193 (1968).

This rule makes it incumbent upon the claimant to prove that she did nothing to contribute to the accident. *Emm and Vanda* v. *State*, 25 C.C.R. 219 (1965).

Although claimant saw the Erwin truck coming from the north, claimant's left, on a 4-lane highway and approaching the intersection at a speed of 50 to 60 m.p.h., she did not stop before entering the intersection. Claimant contends that since she did not see a stop sign, she assumed that the Erwin vehicle had to stop. More-

over, claimant maintains that she had the right of way by reason of her being on the right of the Erwin vehicle, and cites *Ch. 95½, Sec. 165a, Ill.Rev.Stat., 1965.*

Claimant further contends that the intersection was an "open" intersection because the "stop" sign was down. To support this contention, claimant relies on *Spiotta* v. *Hamilton*, 120 Ill.App.2d 387 (1970).

Counsel for both sides have argued the *Spiotta* case at length, and properly distinguished it from *Vierke* v. *Sunset Valley Creamery Company*, 58 Ill.App.2d 323. We find that the distinctions make *Vierke* the rule more applicable to the case at bar.

The *Spiotta* case held that a "right-of-way instruction is properly given to the intersection of two nonpreferential roads, both when signals are nonexistent or temporarily out of operation". (*Spiotta* at page 394) That case involved an intersection of two nonpreferential two-laned roads, unlike the intersection here where Route 148 was a four-lane divided highway, and Old Route 13 was two lane. Further, the plaintiff in *Spiotta* stopped at the intersection and observed other vehicles, southbound and westbound, come up to the intersection and take turns proceeding from a dead stop. (*Spiotta* at page 391) In the instant case, claimant did not stop but rather sped through the intersection at 20 miles per hour on the assumption that if she didn't have to stop, the Erwin vehicle had to. The *Spiotta* case, and the *Vierke* case distinguished therein, are dependent on the respective knowledge and expectations of the parties approaching the intersection. If there is nothing to indicate that one of the roads is preferred, then the intersection is "open" as in *Spiotta*. If a driver knows or should have known that one of the roads is a preferential road, as in *Vierke*, then the intersection is not open.

In the instant case we believe that, in the proper exercise of due care and caution for her personal safety, claimant should have seen and known that she was approaching an intersection with a preferential highway. The facts clearly indicate that this was so even in the absence of the downed stop sign. Her view of the intersection was unobstructed. There was an advance warning sign, STOP AHEAD, which she admits she did not see. There was a stop sign for the right turn lane which was visible for a distance of 125 feet back in her lane. There was also an information sign approximately 50 feet west of the intersection detailing directions to Herrin, Williamson County Airport, Field Trial Club and Marion. All of these warnings clearly indicate that she was approaching an important intersection. She also saw the Erwin truck coming towards the intersection at high speed.

Even if a vehicle has the right of way, as claimant erroneously assumed that she did, this does not relieve a driver from the duty to exercise ordinary care in approaching, entering and driving through the intersection. (*Waldren* v. *Hardwick*, 99 Ill.App.2d 36-1968) Rather, as the court stated in *Conner* v. *McGrew*, 32 Ill.App.2d 214, 217 (1961),

". . . a driver [even] on a preferential highway does not have an absolute or unqualified right of way that can be asserted regardless of circumstances, distances or speed. *Such a driver may not plunge blindly ahead in reliance upon an assumption that the other motorist will obey the law and yield the right of way, nor may he heedlessly proceed into obvious danger.* Rather, there is a duty upon such driver to observe due care in approaching and crossing the intersection and to drive as a prudent person would to avoid a collision when the danger is discovered, or by the exercise of reasonable care, should have been discovered." (Emphasis added)

The above rule is restated in the well known booklet, *"Illinois Rules of the Road"*, as follows:

"It must be understood that, in *every* situation, the right-of-way is some-

thing which is to be given, not taken. If the other driver is not following the rules, let him have the right-of-way even if it really belongs to you. Otherwise, you will be gambling with the lives of yourself and your passengers." [Such gambling is negligence.]

It is well settled that a driver approaching an intersection, who fails to look as he approaches, to ascertain whether there are other cars in proximity, especially those which might have the right of way over him, is guilty of want of ordinary care and contributory negligence. (*Touhey* v. *Yellow Cab Company*, 33 Ill.App.2d 180, 185 (1962) It would be a gross anomaly to hold that claimant fulfilled the above duty when, after observing the oncoming vehicle, she plunged heedlessly ahead without again looking or making any effort to avoid the ensuing collision. The duty of the drivers approaching an intersection to avoid a collision is reciprocal. It is not discharged by a single look and an assumption of right of way.

The claimant, a teacher with high academic achievements, actively engaged in sports and a wide range of civic and social activities, more than qualifies as a prudent person. Yet her own testimony clearly establishes the fact that she was negligent on this particular occasion.

We need not comment on whether or not Milo Erwin was also negligent, as claimant contends. It would make no difference in our conclusion of this action. We find that claimant's contributory negligence was the proximate cause of her injuries. Therefore, her claim against the respondent must be denied.

Count II of the complaint contains a claim of Billy Pyle, husband of claimant, Mildred Pyle, for the husband's loss of consortium resulting from the injuries his wife sustained in this unfortunate accident. He seeks damages for the loss of his wife's society, companionship,

and related conjugal benefits, as well as loss of her services.

"Generally, a cause of action for loss of consortium of the wife does not exist in the husband unless the defendant [respondent] would have been liable directly to the wife for her injury occasioning the loss of consortium." *(41 Am.Jur.2d, Husband and Wife, §451-452, p. 379-380, 1968)*

While the Illinois Supreme Court has not ruled on this issue, the Appellate Court on several occasions has denied recovery for loss of consortium on the grounds that the cause of action is based on the principal cause of action. See *Lyons* v. *Midwest Transfer Company*, 46 Ill.App.2d 275 (1964); *Clark* v. *Carson Pirie Scott and Co.*, 340 Ill.App. 260 (1950); *Tjaden* v. *Moses*, 94 Ill.App.2d 361, 365 (1968).

We hold that claim for loss of consortium is derivative in nature and is dependent upon the right of the injured spouse to recover.

Since the claim of Mildred Pyle has been denied, it, therefore, follows that the dependent claim of her husband for loss of consortium must also be denied.

This claim is hereby denied.