(No. 79-CC-0667–

DONALD L. ADAMS, Administrator for the Estate of Barbara J. Adams, Deceased, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed November 23, 1981.*

HARLAN HELLER, for Claimant.

TYRONE C. FAHNER, Attorney General (SUE MILLER, Assistant Attorney General, of counsel), for Respondent.

POCH, J.

Claimant brings an action sounding in tort pursuant to section 8(d) of the State of Illinois Court of Claims Act

(Ill. Rev. Stat. 1979, ch. 37, par. 439.8(d)). Claimant is the administrator for Barbara J. Adams, who was killed in an automobile accident which occurred at the intersection of Route 128 and U.S. Route 40, three miles east of Altamont, Illinois. Illinois Route 128 north of U.S. Route 40 divides the counties of Effingham and Fayette in the State of Illinois. The accident occurred when the decedent, Barbara Adams, proceeded on Route 128 in a southerly direction onto U.S. Route 40 where her vehicle was struck by a westbound vehicle being operated along and upon U.S. Route 40. The decedent died of the injuries sustained in the automobile accident on September 3, 1977.

Claimant alleges that the State was negligent in many respects, but essentially the claim revolves about the State's claimed negligence in failing to replace a stop sign that had been knocked down at the intersection of Illinois Route 128 and U.S. Route 40, and which controlled southbound vehicles on Route 128 as they entered the intersection of Route 128 and U.S. Route 40.

Claimant alleges, and the State does not dispute, that the stop sign governing southbound traffic on Illinois Route 128 was not standing for a period of several days prior to the accident resulting in the death of Claimant's decedent. On August 29, 1977, the Monday before September 3, 1977, Tim Trigleth observed that the stop sign controlling southbound traffic on Illinois Route 128 was missing. Trigleth transversed Route 128 going to and from his place of employment. Joe Hartobben, an Altamont police officer, observed that the stop sign was damaged and was not standing on August 30, 1977. Hartobben radioed the Effingham city police, who in turn confirmed that the State police had been advised that the stop sign was down.

September 3, 1977, was on a Saturday. On the preceding Wednesday, Shirley Warner noticed that the stop sign was missing. On cross-examination, Mrs. Warner stated she did not call anyone about the sign being down, because there was a lot of construction going on in the area, so she didn't think anything about it. She didn't recall exactly what kind of construction was going on, but there were people working on the road, and she would see construction people out there when she would drive through the area where the stop sign was located. She said the construction people were "back pretty far from the intersection" on the Wednesday before the accident, and that she didn't recall what they were doing. Their truck was orange. The witness recalled seeing men working on the road shoulders "doing something there", but the witness didn't "recall exactly whether it was repaving or what".

James Wernsing, an Illinois Department of Transportation employee, testified that on August 29, 1977, there was work being done on Illinois Route 128 north of U.S. Route 40. The State employee was named Metzger. Metzger lived in Fayette County. In order to get from Vandalia to Route 128 and to get from Route 128 to Vandalia, Metzger would have had to pass the intersection of Routes 40 and 128. According to the records of the Department of Transportation, Metzger and his co-employee, Shelton, were cleaning dirt and debris by hand methods on Route 128 north of the intersection of Route 128 and Route 40. Metzger and Shelton would have been out of the truck, picking up trash along the road and loading it onto an orange State truck.

An expert witness called by the plaintiff, Paul Box, a traffic engineer, inspected the intersection and examined photographs of the intersection. Mr. Box identified a

traffic manual effective and in force during the year 1977 relating to highway sign responsibilities of the State of Illinois. Box testified that it was a custom and practice among public agencies that safety signs such as stop signs should be replaced after having been knocked down or damaged within 36 hours.

Respondent does not dispute the evidence of Claimant, but argues that there was no evidence that the Respondent had "actually been contacted" regarding the damaged sign. Respondent argues, "it is clear from the evidence, or lack of it, that the State did not have actual knowledge of this dangerous condition". Respondent argues "there is some indication that State crews may have been in the area of the intersection of Route 40 and Route 128, but there is nothing to show this conclusively."

There is some evidence that the State had actual notice that the stop sign in question had been damaged. Joseph Hartobben testified, without objection, that he radioed the Effingham city police, who confirmed that the State of Illinois had been notified that the stop sign was down. This evidence was not objected to or rebutted in any way by the State of Illinois.

In addition to the direct evidence of notice, which was not rebutted, and perhaps more importantly, there was evidence that at least two State highway maintenance employees drove through the intersection on August 29, 1977 (the Monday before the collision). It is not disputed that at the time the Department of Transportation employees went through the intersection, the stop sign controlling the southbound lane of traffic on Route 128 was missing. It is uncontradicted that the failure of these employees to report the fact that the sign was down did not comply with the standard of care required of DOT Employees. The presence of Department of

Transportation employees at the intersection at times when the State concedes that the stop sign was missing should give constructive notice to Respondent of the absence of the sign. *Visco v. State of Illinois* (1953), 21 Ill. Ct. Cl. 480.

Respondent relies on *Pyle v. State of Illinois*, 29 Ill. Ct. Cl. 133, in suggesting that the State was not shown to be negligent in the case at bar. In *Pyle*, the stop sign was down 29 hours. In the present case, the stop sign was down for at least six days. This Court has imposed liability on Respondent where the State had constructive notice of defects. *Visco v. State of Illinois* (1953), 21 Ill. Ct. Cl. 480.

We believe, in the case at bar, that the State had both actual and constructive notice that the stop sign was down for at least 72 hours prior to the unfortunate accident in which Claimant's decedent was killed.

Respondent argues, however, that Claimant's decedent was negligent and that recovery should be barred due to her contributory negligence. The record shows that the view of a driver travelling in a southerly direction on Illinois Route 128 was partially obscured by vegetation and plants on the east right-of-way of Illinois Route 128. The stop sign controlling southbound traffic on Route 128 as it intersected U.S. Route 40 from the north was down as Mrs. Adams approached the intersection. There was some evidence that a passenger in Claimant's vehicle saw a vehicle travelling diagonally on U.S. Route 40 prior to the accident. There is no evidence, however, that Barbara Adams saw any such vehicle or was alerted to the north boundary of the intersection which is the subject matter of this claim. There is no evidence that Barbara Adams proceeded "blindly" or knowingly drove into a dangerous situation. On the

contrary, the evidence was clear that Barbara Adams was a driver of careful habits. We find that Claimant's decedent was, at the time of the accident, free from contributory negligence.

Although it is clear that the State is not an insurer of all accidents upon its highways, the State does have a responsibility to correct dangerous defects of which the State has actual or constructive notice. (*Finn v. State of Illinois*, 24 Ill. Ct. Cl. 177; *Perlman v. State of Illinois*, 33 Ill. Ct. Cl. 28; *Stedman v. State of Illinois*, 22 Ill. Ct. Cl. 446; *Weygandt v. State of Illinois*, 22 Ill. Ct. Cl. 478.) In the case at bar, the State had more than ample constructive notice, if not actual notice, of the absence of this stop sign which created an extremely perilous condition for traffic southbound on Route 128.

It is true, and this Court has repeatedly held, that drivers utilizing highways of the State are charged with the duty of looking and seeing things which are obviously visible. (*Pyle v. State of Illinois*, 29 Ill. Ct. Cl. 133.) However, the only evidence with respect to the view of Mrs. Adams as she approached the northern edge of the intersection with U.S. Route 40 was that her view of westbound traffic on Route 40 was at least partially obscured; there is no evidence that there was obvious danger to southbound vehicles which could be readily observed.

It should further be observed that the intersection in question was not an obscure rural intersection. This is an intersection of an Illinois highway with a U.S. highway from which the Court may infer that traffic was more than incidental.

The life expectancy of Barbara Adams at the time of her death was 39.5 more years, and the economic loss

sustained by her husband and children who survived her was in the sum of $273,320.00. This is far in excess of the applicable maximum award within the power of this Court.

Claimant is hereby awarded the sum of $100,000.