(No. 87-CC-0223

RICHARD T. COULSON, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed March 16, 1993.*

*Order on petition for rehearing filed December 10, 1993.*

COULSON & GRIMM (WESLEY J. COULSON, of counsel), for Claimant.

ROLAND W. BURRIS, Attorney General (THOMAS S. GRAY, Assistant Attorney General, of counsel), for Respondent.

OPINION

Frederick, J.

Claimant, Richard T. Coulson, filed his cause of action in the Court of Claims on August 6, 1986. He alleged that the State negligently operated a street sweeper resulting in Claimant's vehicle colliding with the rear of the street sweeper and that Claimant's vehicle was, in turn, struck from the rear by a pickup truck that had been following the Claimant. Claimant alleges that he sustained personal injuries as a result of the collisions and seeks compensation from the State for those injuries, including loss of income.

## The Facts

Claimant testified that in the morning of August 4, 1984, he was operating his vehicle westbound on Route 162 as it approached the I-55—I-70 overpass near Troy, Illinois. Claimant testified it was a "nice day" and hot. The speed limit at the accident site was 45 miles per hour. The Claimant was driving about 40 miles per hour as he approached the I-55—I-70 overpass. As Claimant approached the scene of the accident, a tractor trailer rig made a turn in front of Claimant, and Claimant started to slow down. The tractor trailer rig began to access the entrance onto the interstate highway and Claimant veered to his left to pass the tractor trailer rig. Claimant passed the truck on the left as the truck was going onto the northbound entrance ramp for the interstate highway.

Claimant testified there was traffic congestion in the area and he was concerned about getting through the intersection safely. After making it through the intersection,

Claimant focused his attention on the westbound lane of Route 162 where he observed a dust cloud. There was no traffic ahead of him on the westbound lane of Route 162. Claimant testified that he "didn't know what he was getting into" and was concerned about what the dust cloud was or if there was traffic ahead of him. Claimant testified that when he first went into the dust cloud, he immediately took his foot off the accelerator and started tapping his brakes. Claimant testified that he could not observe how far west he had proceeded on the bridge overpass when he tapped his brakes because the dust was so intense he did not know exactly where he was at. Claimant testified he didn't know if he was going to hit something in the dust cloud, or if somebody was going to hit him in the rear because there was traffic behind him. Claimant testified he was afraid to stop completely for fear of getting struck in the rear. Claimant testified it was a thick dust cloud and he started pumping his brakes attempting to stop his vehicle. When Claimant applied his brakes, he testified he started sliding as if on icy pavement but did not have traction and very poor braking power. Claimant testified that as he was pumping his brakes and sliding he looked up and saw striped diagonal white lines eight or ten feet in front of him, and then he hit the vehicle which, as it turned out, was a State-operated street sweeper. He did not observe the lights on the back of the street sweeper and there was no "trail" vehicle behind the street sweeper. There were no flagmen or signs indicating street-sweeping operations in the area. Claimant testified that after a definite delay, his vehicle was struck from the rear, and his vehicle was pushed forward. Claimant was taken from the scene of the accident by an ambulance and the medical evidence indicates he suffered neck injuries.

The operator of the street sweeper, Robert William Gordon, was called by the State, and testified that he had swept the eastbound lanes on the bridge overpass, and in turn was sweeping the westbound lanes of Route 162 on the bridge overpass at the time of the accident. He testified the conditions were dry and dirty on the day of the accident. He was sweeping at a walking pace or three miles per hour. Gordon testified that the speed at which streets are swept depends on the debris and dirt that is involved "because he will create a lot of dust, which is unsafe to use yourself * * * if you go too fast." Gordon testified he could see the amount of dust that he was making behind him. Gordon testified that he had no dust problem sweeping the westbound lanes of Route 162. Gordon was keeping dust down with water, and was looking in his rearview mirror. Gordon did not observe any unusual dust cloud behind the machine at any time on the date in question. Gordon testified there was a breeze or wind from the northwest. He testified that the travel lanes were clean and dry and the dirt was in the gutter up next to the curbing. The street sweeping machine takes the dirt away from the curbing using gutter brooms that are turned inward, and the dirt is thrown into an elevator that dumps the dirt into a hopper on the street sweeper.

Gordon did not feel the impact of the collision. The street sweeper was damaged when struck by Claimant's vehicle in the rear by shearing off one of the pickup brooms off of its drive shaft. Gordon became aware of the accident when he looked in his rearview mirror and saw that he was picking up no dirt. Gordon observed a heavy amount of dirt and a car sitting back at an angle through his rearview mirror. Gordon stopped 40 or 50 feet in front of the Claimant's vehicle. Gordon testified there was a little bit of material on the road where the vehicles were

located, but not in the westbound lanes where he had swept.

On cross-examination, Gordon testified that the reason the bridge was being swept was in anticipation of the application of a concrete preservative oil and not because there was debris on the overpass. Gordon testified that the area of the overpass was in no different condition on the day of the accident as it had been on occasions when he had swept it before.

David Hill was operating his 1982 Chevrolet pickup truck behind Claimant's vehicle at the time of the collision. Hill testified that there was a large amount of dirt on the bridge overpass which he noticed when he was traveling east on Route 162 shortly before returning in the westbound lanes. He had earlier noticed that trucks traveling westbound on 162 were creating "an enormous amount of dust" as they went across the bridge. Hill was familiar with that location, having traveled it many times earlier. Hill had stopped just east of the accident scene, and when he pulled onto Route 162 there was a green station wagon in front of him which he later determined was Claimant's automobile. Claimant was stopped, allowing a large tractor trailer rig to come out of the frontage road and make a "U-turn" onto the interstate ramp. Hill didn't remember if Claimant had come to a complete stop or not. Hill recalled that he couldn't have been going more than 30 or 35 mph at that point. The tractor trailer rig continued on its journey onto the interstate ramp. Hill observed Claimant veer left and head up the overpass and Hill followed him up.

Hill testified that there was a point in time in which the tractor trailer rig that turned onto Route 162 and then turned off onto the interstate ramp was obscuring the view of traffic further west in the westbound lane of

Route 162. Hill testified that after the truck entered onto the entrance ramp and Claimant's vehicle went left around the tractor trailer rig, Hill could see a cloud of dust ahead of him and Claimant's vehicle on the overpass. Hill testified that Claimant's car headed up toward the cloud of dust and so did his vehicle. Hill assumed that there was another vehicle ahead of them that had gone across the bridge and had created the dust as Hill had noticed other vehicles doing earlier as he had crossed the bridge headed east.

Hill testified that after the tractor trailer rig turned onto the interstate entrance ramp, he saw that Claimant had not yet driven into the cloud of dust, but it was just another second or two before Claimant's vehicle went into the cloud of dust. At that time, Hill testified that he was three or four car lengths behind Claimant's vehicle. Hill described the cloud of dust as "totally encompassing" the entire lane and 20 feet tall. Hill said the dust was a "dark cloud" and fairly dense. Hill said that the cloud of dust he observed was comparable to the dust he saw trucks raising earlier when he had traversed the bridge overpass headed east. Hill testified that once Claimant's vehicle went into the cloud of dust it was no longer visible to him. He stated that when he went into the cloud of dust he assumed that he would come out the other side and it would dissipate. Hill did not see the street sweeper at any time before his vehicle struck Claimant's vehicle. Hill stated that it seemed like as soon as he went into the cloud of dust at the rate of approximately 30 miles per hour, the first thing he noticed were tail lights and he was hitting them. Hill said that the impact was almost instantaneous after he entered the cloud of dust. When Hill first observed the street sweeper, the rear brush was broken and the sweeper was still moving. Hill stated that the

street sweeper was not continuing to raise dust at that time.

Hill testified that he looked at the surface of the overpass and there was at least an inch and a half of dusty, dry, loose dirt all over the road surface. Hill testified that you could see the dirt had been thrown to the side with swelling motions, but there was still an awful lot of dirt there. Hill demonstrated a powdery handful of dirt to a police officer who was at the scene of the accident.

A Troy police officer named Steven Howe testified that he came on the scene of the accident and observed that the surface of Route 162 where the vehicles were located was dirty. Howe testified that it was hard to determine the point of impact because there was quite a bit of dirt on the bridge. Howe testified that there was dirt on the westbound lanes all the way back to where the entrance ramp for northbound traffic on the interstate turned off of Route 162.

Keith Owings, an expert witness for the Claimant, testified that he had been employed by Delta Sweeping Company for 14 years and was familiar with the type of sweeper involved in this accident. Owings testified that trail vehicles with warning signs should be used in street sweeping operations where traffic speeds exceed 40 miles per hour, and that in his opinion, under the facts and evidence of this case, a trail vehicle with an arrow board should have been used behind the street sweeper alerting oncoming traffic behind it. Further, Owings testified that the speed at which Gordon testified he was operating the street sweeper was too fast, and should have been reduced to probably a half a mile an hour to a quarter of a mile an hour, which would have been an appropriate speed to control dust at the site of this accident.

Claimant contends that Robert William Gordon was negligent in operating the street sweeper at a rate of speed too fast for the conditions he encountered on the bridge overpass, and in the creation of a large dust cloud behind the street sweeper, creating a condition which resulted in the accident and the Claimant's injuries. Furthermore, Claimant contends that Respondent was negligent in its policies and practices in relation to the use of "trail vehicles" to warn vehicles approaching a street sweeper from the rear. Respondent contends that the evidence did not establish that there was a heavy or unusual amount of debris or dirt on the overpass or that the street sweeper was being operated in a negligent manner. Respondent concedes the existence of a dust cloud at the time of the occurrence but argues that the street sweeper was not the proximate cause of the accident, but that the failure of Claimant to keep a proper lookout, or to operate his vehicle reasonably and prudently was the proximate cause of Claimant's injuries.

### The Law

In *Witt v. State* (1969), 26 Ill. Ct. Cl. 318, the employees of Respondent had started a fire which blanketed an adjoining highway with smoke impairing the vision of drivers of motor vehicles on the highway. Claimant had operated his vehicle into the rear of a truck which was unseen and stopped on the highway, thus causing the alleged damages. Respondent argued in *Witt, supra,* that when the Claimant could see the smoke enveloping the highway, and was aware of the condition and continued to operate his vehicle through the smoke, he had failed to proceed with caution or with the care of an ordinarily prudent person.

The Court held in *Witt, supra,* that the Claimant had not acted with due care and caution by driving into dense

smoke which was clearly visible from a distance and proceeding at 25 to 30 miles per hour without being able to see what was in front of him. This Court cited with approval from *Ames v. Terminal Railroad Assn.* (1947), 332 Ill. App. 187, 75 N.E.2d 42, where the Illinois Appellate Court held that persons approaching a place of danger have a duty to do so cautiously, and with a proper degree of care for their own safety. A person has no right to knowingly expose himself to danger and then recover damages for an injury which he might have avoided by the use of care for his own safety. This Court has repeatedly held that drivers utilizing highways of the State are charged with the duty of looking and seeing things which are obviously visible. *Adams v. State* (1981), 35 Ill. Ct. Cl. 216.

In *Ames, supra,* the evidence presented on behalf of the claimants demonstrated that they first saw the smoke when their car was 80 or 90 feet east of the place where there was a vehicle stopped. The plaintiffs' car traveled about 40 feet in the first smoke that was encountered by the plaintiff which obstructed the view so that they could not see too well and that the driver of the car took his foot off the accelerator, which automatically reduced the speed of the car, but at no time did he apply his brakes. The evidence also showed that the car was driven a distance of 30 to 40 feet in the dense smoke, which was so dense that the driver could not see beyond the hood of the automobile before it ran into the end of a bus. The driver made no attempt to stop the automobile upon becoming apprehensive of the danger involved in driving in the dense smoke where he could not see beyond the hood of his car, nor did the plaintiffs' passengers warn the driver of a danger or request him to avoid the danger.

This Court, in *Witt, supra,* at 323, stated as follows, "Where the highway is of such condition that one can see

nothing ahead, it is not reasonable to proceed at 25 to 30 m.p.h., if at all."

Claimant cites *Schuett v. State* (1984), 36 Ill. Ct. Cl. 61, in support of the proposition that the State must exercise reasonable care in the performance of its duties of maintaining the highways in a safe condition. In *Schuett, supra*, the State had piled snow eight feet high onto the median of the road, thereby blocking the vision of motorists. The Court held that the State's own plowing operations created the dangerous condition, and made an award to the claimant because she went into the intersection inch by inch before she was struck. The State, however, is not an insurer of all accidents upon its highways. *Adams v. State* (1981), 35 Ill. Ct. Cl. 216.

This Court distinguished *Schuett, supra*, from its ruling in *Aetna Insurance Co. v. State* (1981), 34 Ill. Ct. Cl. 167. In *Aetna Insurance Co., supra*, the claimant intended to make a left-hand turn but found his vision obstructed by snow plowed six feet deep into the median. Claimant pulled slowly into the intersection and upon finally seeing an oncoming car, claimant attempted to accelerate through the intersection where claimant was struck. The Court held that claimant was negligent in rolling out into the intersection when he saw the oncoming traffic. The Court pointed out that claimant had every opportunity to stop his vehicle and did not "inch out" into the intersection as had other cars that were observed, but rolled out into the intersection without stopping at any point. The Court concluded that the claimant in *Schuett, supra*, who pulled forward an inch at a time had used as much caution as was possible to navigate an intersection made dangerous by the State's snow-plowing techniques unlike the claimant in *Aetna Insurance Co., supra*.

Expert witnesses called by both the State and the

Claimant in the present case testified that the operations of street sweepers are prone to create dust. Based on Claimant's Exhibit 1, it appears that Claimant observed the cloud of dust sufficiently in advance of having reached it, to have decreased the speed of his vehicle considerably, or to have stopped altogether due to the potential impairment to his vision. However, although Claimant "didn't know what he was getting into" he accelerated toward and into the dust cloud. He took his foot off the accelerator and started "tapping his brakes" but only started pumping his brakes after he had gotten into the dust cloud and had found that it was more intense than he expected. Claimant "kind of thought" that the dust cloud might go away as quickly as it had come. Claimant described "tapping" his brakes by "just touching them" and "pumping" his brakes as "pushing the brake down, releasing it, pushing the brake down and releasing it."

Hill, the driver of the vehicle immediately behind the Claimant's vehicle, testified that he observed Claimant's car pass the rear of the exiting tractor trailer on the left and Claimant's car proceed up the incline toward the bridge. Hill observed the exiting tractor trailer move out of his line of sight, and he then saw a cloud of dust on the overpass with Claimant's car headed directly toward the cloud of dust. Hill's vehicle was also headed toward the cloud of dust. Hill assumed there was another vehicle ahead of Claimant's vehicle that had gone across the bridge, and created the dust similar to that which he had noticed other vehicles doing when he was earlier traveling east on Route 162. When Hill observed the scene after the truck exited Route 162, Claimant's vehicle had not yet driven into the cloud of dust and it was just another second or two before Claimant went into the cloud of dust. Hill's vehicle was only three or four car

lengths behind Claimant's vehicle at that point. Hill's vehicle entered the cloud of dust at a rate of 35 miles per hour. Hill testified it was five seconds more or less from the time he first saw the cloud of dust until his vehicle entered it. On cross-examination, Hill testified that after the tractor trailer had exited Route 162 to the right, both Hill's vehicle and Claimant's car accelerated toward the cloud of dust, and that the distance between Hill's vehicle and Claimant's car was increasing. Hill testified that both vehicles had increased their speed "from almost nothing to 30, 35 m.p.h."

Hill also testified that he lost sight of Claimant's vehicle upon its entry into the dust cloud. Hill did not think that he was accelerating, but had hesitated and entered the dust cloud at close to 30 miles per hour. Hill testified, "I didn't accelerate more, but eased off the gas as I entered it."

It seems no less unreasonable for the Claimant in this case to have accelerated into a dense cloud of dust at approximately 30 miles per hour and sustain damages for which recovery is sought, than it was for the claimant in *Aetna Insurance Co., supra,* to have rolled out into the intersection when his vision was obscured. In both cases, there was a clear danger. In both cases, the driver proceeded despite the obvious clear danger resulting in an accident. Despite the intervening application of the rules of comparative negligence, the proximate cause of the damage sustained by the Claimant was not the alleged negligence of the State but the negligence of the operator of the vehicle in proceeding in the operation of his vehicle when there was obvious and present danger.

The Claimant had a duty to maintain a proper lookout and to stop or slow to a very slow speed prior to entering the dust cloud. As such, the question of negligence

and proximate cause of the accident is properly a question for the finder of fact. The weight of the evidence supports the conclusion that Claimant was negligent and the proximate cause of the accident for failing to exercise reasonable caution and care when approaching the dust cloud no matter how the dust cloud was created. *Price v. State* (1985), 38 Ill. Ct. Cl. 60.

The adoption of comparative negligence in Illinois did not extinguish the requirement that Claimant must establish proximate cause on the part of the Respondent and the failure of Claimant to so establish proximate cause precludes liability and negates the need to compare fault. *Harris v. State* (1986), 39 Ill. Ct. Cl. 176.

There is no evidence in the record to suggest that had Claimant prudently applied his brakes when he observed or should have observed the dense dust cloud confronting him that he could not have avoided a collision with the rear of the street sweeper.

It is therefore our order that this claim be denied.

## ORDER

FREDERICK, J.

This cause coming on for hearing on the Claimant's petition for rehearing and the Respondent's objection thereto, and the Court having reviewed the evidence, testimony, pleadings and prior opinion, the Court having heard oral arguments, and the Court being fully advised in the premises, wherefore, the Court finds:

1. That the evidence supports the opinion of the Court filed March 16, 1993.

2. That the Court properly found Claimant's negligence to be the cause of his injuries.

3. That the Court's opinion was not against the manifest weight of the evidence.

Therefore, it is ordered that the petition for rehearing is denied.